

ORDERED in the Southern District of Florida on August 2, 2022.

**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Case No.: 20-18361-BKC-MAM

Melanie Hollingsworth Cabot,

     Debtor(s).                           Chapter 13

_____/

Susan Bach, Bob Murphy, and Infosage          Adv. Proc. No.: 20-01412-MAM
Corporation,

     Plaintiff(s),

v.

Melanie Hollingsworth Cabot,

     Defendant(s).

_____/

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 59)

    Summary judgment can be tricky for fact-based claims. Add in a dose of

collateral estoppel, slightly different legal standards of liability, complicated factual

findings, and a request for "partial" summary judgment, and a recipe for murkiness emerges. Such is the case here, where the Court has a final fact-intensive state court opinion but must place that ruling in the context of nondischargeability, which only a bankruptcy court can determine. In the end, Plaintiffs' request for summary judgment must be denied in part, due to Plaintiffs' failure to demonstrate the existence of a statutory or express trust, but also granted in part based upon the clarity of the state court's assessment of damages in connection with Cabot's fraudulent representations. The Court explores its rulings on both bases in this Opinion.

## PROCEDURAL HISTORY

Plaintiffs Susan Bach, Bob Murphy, and Infosage Corporation commenced this adversary proceeding on December 18, 2020, about six months after the Petition Date (July 31, 2020). Their initial Complaint (ECF No. 1) seeks damages against Debtor Melanie Hollingsworth Cabot under three theories of liability: (i) nondischargeabilty under 11 U.S.C. § 523(a)(2)(A) in favor of Murphy and Infosage, (ii) nondischargeabilty under 11 U.S.C. § 523(a)(4) in favor of Murphy and Infosage, and (iii) nondischargeabilty under 11 U.S.C. § 523(a)(2)(A) in favor of Bach.[1] As a basis for liability, Plaintiffs attached to the Complaint a copy of the *Findings of Fact, Rulings of Law, and Order for Judgment After Jury Waived Trial* (the "State Court

---

[1] Instead of enumerating the claims by the defendants against whom relief is sought, as is the more common practice, the Complaint identifies claims by plaintiffs. The debtor is the sole defendant and the plaintiffs recovered damages in the state court under different legal theories.

Opinion") issued by the Superior Court for the Commonwealth of Massachusetts in

Suffolk County, Massachusetts (the "State Court") in a prior case styled as *Bach v.*

*Melanie Cabot and Where to Park, Inc.*, SUCV2005-04042-D (the "State Court

Case").[2]

Within the thirty-day period allowed for a response to the Complaint, Cabot

filed a motion to dismiss (ECF No. 7) the adversary proceeding. The Court issued an

order granting in part and denying in part that motion, after which Plaintiffs filed an

Amended Complaint (ECF No. 30). The Amended Complaint seeks relief upon the

same three bases previously described.

About a year after the filing of the Amended Complaint, Plaintiffs moved for

partial summary judgment (ECF No. 59) (the "Motion"). The Motion seeks judgment

on counts two and three of the Amended Complaint only, namely in favor of Murphy

and Infosage under § 523(a)(4) (Count Two), and in favor of Bach under § 523(a)(2)(A)

(Count Three). The Court will address each Count individually after briefing

describing the history of the State Court Opinion.

## STATE COURT OPINION AND GENERAL BACKGROUND

The State Court Opinion spanned 45 pages and contained a detailed discussion

of the parties' business dealings. This Court accepted the State Court's factual

---

[2] The State Court Case appears to have consolidated two lawsuits against Cabot: one commenced by
Bach and another commenced by Murphy and Infosage.

findings as true and recounts the history here in the briefest manner possible.

### *Cabot, Murphy, and Infosage*

Around April 2002, Murphy and Cabot embarked upon a business venture together. The venture focused upon publication of a parking guide for the Boston area. To further their efforts, Murphy and Cabot incorporated their venture as "Infosage, Inc."

By July 2004, tensions between Murphy and Cabot escalated, prompting Cabot to resign from her role as a principal of Infosage. This resignation did not end Cabot's efforts to pursue and promote a parking guide for the Boston area. Despite the rather obvious conclusion that her continued pursuit would place her new parking product in direct competition with Infosage's (and thus Murphy's) parking guide, Cabot rationalized her actions by claiming that the resulting guide would be "better", and therefore not a breach of any duty she owed to Infosage.[3]

Cabot engaged in her new venture by reusing maps and other information that was demonstrably the work product of Murphy and Infosage. This conclusion, along with a host of other factual findings, prompted the State Court to hold Cabot liable to Murphy and Infosage for breach of fiduciary duty and tortious interference with advantageous business relations. The State Court awarded Murphy and Infosage (jointly) the amount of $31,134.95 as a collective award under both theories of

---

[3] State Court Opinion, p. 9.

liability.[4]

*Cabot and Bach*

During the course of Cabot's new venture, she enlisted the help of Bach. Although not directly relevant to their legal dispute, it is helpful to note that Bach and Cabot shared a familial history because Bach had been married to Cabot's father for 15 years. The close nature of this tie likely inspired an initial level of confidence atypical of most arms-length business partners. As events unfolded, however, the fragility of their relationship became apparent.

The State Court Opinion sets forth a tale worthy of a novel. At various points in time, Cabot misrepresented or intentionally omitted key facts to Bach, including Cabot's misappropriation of work material in which both Murphy and Infosage held an interest. The State Court explicitly found that Bach accepted and relied upon Cabot's misrepresentations to her detriment. But … the saga then took a twist.

When Bach learned that Cabot had misrepresented the scope of Cabot's ownership of the work material, Bach flipped the script on Cabot and shopped the parking guide concept to yet another player. As the State Court summed it up, "Bach did to Cabot what Cabot had done to Murphy."[5] In other words, Bach was not blameless in terms of her actions. She too concocted a scheme to defraud, and the

---

[4] *Id.* at 45.

[5] *Id.* at 32.

scope of her own potential liability for that scheme is not clear from the record.[6]

In the end, the State Court found Cabot liable to Bach upon three legal theories: breach of fiduciary duty, fraud, and breach of contract. The State Court awarded Bach the lump sum amount of $86,444.51 for her injuries under all three theories of liability.[7]

## LEGAL STANDARDS

Multiple legal standards informed the Court's analysis of summary judgment in this Adversary Proceeding. Because several concepts apply at once, the Court will explain each legal standard first, then apply all standards as needed in its analysis.

### I.    Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8] "When deciding summary judgment, the Court may look to materials in the record such as depositions, documents, affidavits or declarations, and admissions." *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 981 F. Supp. 2d 1302, 1305-06 (S.D. Fla. 2013) (citing Fed. R. Civ. P. 56(c)).

The Court "must view all the evidence and all factual inferences reasonably

---

[6] *Id.* Bach's concoction of her own scheme appears to have limited her potential damage award from Cabot.

[7] *Id.* at 45.

[8] Federal Rule of Bankruptcy Procedure 7056 makes Rule 56 applicable to bankruptcy proceedings.

drawn from the evidence in the light most favorable to the nonmoving party." *Diaz v. Amerijet Int'l, Inc.*, 872 F. Supp. 2d 1365, 1368 (S.D. Fla. 2012) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)) (internal quotation marks omitted); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). The moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011).

## II.    11 U.S.C. § 523(a)(4)

Debts incurred as a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(4) ("§ 523(a)(4)"). To deem a debt nondischargeable under the "defalcation" provision of § 523(a)(4), a bankruptcy court must find the existence of both a fiduciary relationship and a defalcation. *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 817 (11th Cir. 2006). Creditors must establish both elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286 (1991).

Federal law, not state law, determines the definition of a fiduciary relationship for the purpose of § 523(a)(4). *Liberty Nat'l Bank v. Wing (In re Wing)*, 96 B.R. 369,

7

374 (Bankr. M.D. Fla. 1989). Federal courts have narrowed the scope of "fiduciary relationships" to include only those situations involving express or technical trust, and to exclude fiduciary relationships that are implied from contract. *Id.* (quoting *Chapman v. Forsyth*, 43 U.S. 202, 208 (1844)). "An express or technical trust exists when there is a segregated trust res, an identifiable beneficiary, and affirmative trust duties established by contract or by statute." *Am. Sur. & Cas. Co. v. Hutchinson (In re Hutchinson),* 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996) (internal quotation marks and citation omitted).

Within the context of § 523(a)(4), defalcation is the failure to produce funds entrusted to a fiduciary. *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir. 1993). The level of misconduct required for defalcation is relatively low. *Morales v. Codias (In re Codias),* 78 B.R. 344, 346 (Bankr. S.D. Fla. 1987) ("Defalcation is the slightest misconduct …."). Acts constituting defalcation need not rise to the level of fraud, embezzlement, or misappropriation. *Fernandez-Rocha*, 451 F.3d at 817. Despite this low bar, the defendant's state of mind must encompass knowledge of or gross recklessness regarding the improper nature of the fiduciary behavior. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).

### III.   <u>11 U.S.C. § 523(a)(2)(A)</u>

Of all the subsections in the Bankruptcy Code involving nondischargeability of a debt, § 523(a)(2)(A) is probably the most difficult to analyze in the context of summary judgment because the elements are complex and fact intensive. Section

523(a)(2)(A) prohibits discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...." 11 U.S.C. § 523(a)(2)(A). The subsection provides three alternative grounds for dischargeability: actual fraud, false pretenses, and false representation.

To succeed on a § 523(a)(2)(A) claim alleging false representation or actual fraud, courts typically require litigants to prove the common law elements of fraud. *SEC v. Bilzerian (In re Bilzerian),* 153 F.3d 1278, 1281 (11th Cir. 1998); *Husky Int'l Electronics, Inc. v. Ritz,* 136 S.Ct. 1581, 1586 (2016). *C.f. SE Prop. Holdings v. Gaddy (In re Gaddy)*, 977 F.3d 1051, 1057-58 (11th Cir. 2020) (describing application of *Husky*). In the context of § 523(a)(2)(A), those elements include: "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Bilzerian,* 153 F.3d at 1281.

Section 523(a)(2)(A) also applies to debts arising from false pretenses. False pretenses may encompass implied misrepresentations or conduct intended to create and foster a false impression. *Ershowsky v. Freedman (In re Freedman)*, 431 B.R. 245, 256 (Bankr. S.D. Fla. 2010) (internal quotation omitted). As with actual fraud and false representation, creditors seeking redress for false pretenses under § 523(a)(2)(A) must demonstrate justifiable reliance. *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 283-84 (11th Cir. 1995).

9

IV.    **Res Judicata (Collateral Estoppel)**

The concept of res judicata (also called collateral estoppel)[9] applies when a prior order or opinion ascribes liability to a defendant based upon an identical legal theory. The Eleventh Circuit Court of Appeals described the applicable test as containing these elements:

> (1) the issue at stake must be identical to the one decided in the prior litigation;
>
> (2) the issue must have been actually litigated in the prior proceeding;
>
> (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and
>
> (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675-76 (11th Cir. 1993). Although the third element ("critical and necessary") has been a topic of some debate in this Circuit,[10] the general concept behind collateral estoppel is simply that a determination by a prior court of competent jurisdiction serves to "short circuit", or circumvent, the necessity of protracted litigation in a later proceeding. *See generally*

---

[9] State courts frequently use the terms collateral estoppel, judgment by estoppel, and issue preclusion interchangeably. *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1342 n.1 (11th Cir. 2021). Federal courts in this Circuit have generally been more specific. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263-64 (11th Cir. 2011) (describing res judicata as including both claim preclusion and issue preclusion). Within this Opinion, the Court will use the term "collateral estoppel" because that is the term Plaintiffs used in the Motion.

[10] *Harris* contains a detailed discussion of this debate. 3 F.4th at 1346 n.3.

*Allen v. McCurry*, 449 U.S. 90, 94 (1980). If the test for collateral estoppel is met, then further litigation on the relevant point is not only unnecessary but also improper. *Id*.

Plaintiffs argued that collateral estoppel law for the State of Massachusetts applies. This argument is correct, but in raising this argument, Plaintiffs attempted to distinguish language that is functionally the same as that provided by the *St. Laurent* standard. *See* 991 F.2d at 675-76. Massachusetts law requires that a court affirmatively answer the following four questions before applying collateral estoppel:

(1) Was there a final judgment on the merits in the prior adjudication?

(2) Was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication?

(3) Was the issue decided in the prior adjudication identical with the one presented in the action in question?

(4) Was the issue decided in the prior adjudication essential to the judgment in the prior adjudication?

*Alba v. Raytheon Co.,* 809 N.E.2d 516, 521 (2004). Careful reading reveals the following parallels between the two standards:

| Elements described in *St. Laurent* | Massachusetts Analogue |
| --- | --- |
| Element #1 (identical issue) | Element #3 (identical issue) and #2 (identical party) |
| Element #2 (actually litigated) | Element #1 (final judgment on the merits) |
| Element #3 (critical and necessary) | Element #4 (essential) |

Element #4 (standard of proof)            Element # 3 (same issue, which may imply application of same standard of proof)[11]

All elements are functionally (if not numerically) the same.[12] And, because the Court considers multiple aspects of all legal standards in its analysis below, including the elements of the underlying claims and apportionment of damages, the slight difference in the two collateral estoppel standards is not material to the Court's determination of summary judgment.

## ANALYSIS

Parties frequently present the Court with a state court judgment for litigation involving bad acts by the defendant and argue that collateral estoppel mandates a determination of nondischargeability. To determine whether collateral estoppel applies, however, the Court had to consider whether the elements of the state law claim were coextensive with the requirements of the applicable subsection of § 523(a). This analysis required an in-depth analysis of both the elements of the state law claims and the facts supporting the state court's determination that those elements were met.

I.    Nondischargeability Claim for Breach of Fiduciary Duty (Murphy and Infosage)

---

[11] Neither party has argued that strictness of the standard of proof governs the outcome on summary judgment, and the Court likewise finds that this discrepancy is immaterial.

[12] The Court also notes that there is considerable overlap between the "actually decided" and "critical and necessary" elements, as previously observed by the Eleventh Circuit Court of Appeals. *Harris*, 3 F.4th at 1345-47.

Murphy and Infosage faced an extraordinary hurdle on summary judgment: the State Court Opinion applies a standard of liability that was not coextensive with the elements of § 523(a)(4) in the way in which binding precedent requires those elements to be met. Because federal, not state, law applies in the context of § 523(a)(4), the State Court's determination of breach of fiduciary duty is not determinative.[13] This Court must be able to conclude that *both* a fiduciary duty and a defalcation existed. *Guerra*, 451 F.3d at 817. That conclusion requires reference to both the language of the statute and governing case law. *Wing*, 96 B.R. at 374 (quoting *Chapman*, 43 U.S. at 208).

To determine that a fiduciary duty existed under federal common law, the Court needed to ensure that either a statute or a document imposes an express trust obligation. *Hutchinson,* 193 B.R. at 65. Plaintiffs have not provided the Court with a trust document[14] or identified the governing statute. The Court also required a clear description of the defalcation in order to determine which portion of damages should be attributed to § 523(a)(4).

To put it more plainly, the damages that the State Court awarded to Murphy

---

[13] Murphy and Infosage do not argue that collateral estoppel applies for the "fraud" aspect of § 523(a)(4) because the State Court Opinion does not attribute liability for fraud as to their claims. State Court Opinion at 45.

[14] The Court acknowledges that a written agreement encompassing other obligations between the parties could impose fiduciary duties via trust language. The conclusions in this Opinion do not foreclose the existence of this potentiality. The problem is that, as of this time, Plaintiffs have not identified the agreement (whatever it may be) by providing the Court with a citation to the applicable provision(s) creating an express trust. *Hutchinson,* 193 B.R. at 65.

and Infosage were predicated upon a breach of fiduciary duty under Massachusetts law. However, although Massachusetts law allows for this type of relief in the context of a corporate fiduciary obtaining a gain or advantage through a violation of the duty of loyalty, this conduct is insufficient for the type of fiduciary relationship required to qualify for nondischargeability under § 523(a)(4). For liability under § 523(a)(4), a federal court must first find that a statute or contract imposed an express or technical trust that in turn created a fiduciary relationship. *Hutchinson,* 193 B.R. at 65-66.

The State Court did not find the existence of an express or technical trust, which appears to eliminate the ability of this Court to grant relief under § 523(a)(4). Instead, the State Court relied upon common law to find that a fiduciary relationship arose between Cabot, on the one hand, and Murphy and Infosage, on the other, as a result of the common law duties imposed upon directors, officers, and shareholders in a close corporation:

> Directors and officers of a corporation stand in a fiduciary relationship to the corporation. *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 528 (1997). They owe the corporation and its shareholders a duty of care and a "paramount duty of loyalty." *Id*. at 528. Because lnfosage was a close corporation involving Murphy and Cabot as the sole shareholders, directors, and officers, Cabot's duty of utmost good faith and loyalty applied equally to Murphy. *Donahue v. Rodd Electrotype Co. Of New England, Inc*., 367 Mass. 578, 592-94 (1975). Shareholders in a close corporation "must discharge their management responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation." *Id*. at 593. Shareholders in a close corporation are not permitted to frustrate the reasonable expectations of the other shareholders with respect to shared ownership …. Shareholders in a close corporation "must discharge their management responsibilities in conformity with

14

this strict good faith standard. They may not act out of avarice,
expediency or self-interest in derogation of their duty of loyalty to the
other stockholders and to the corporation." *Id.* at 593. Shareholders in
a close corporation are not permitted to frustrate the reasonable
expectations of the other shareholders with respect to shared
ownership.

State Court Opinion at 18-19.

The State Court found that Cabot breached a fiduciary duty by willfully
disregarding her obligations to Murphy and to Infosage. The problem for purposes of
pursuing nondischargeability of Murphy's damage award is that the type of fiduciary
relationship recognized by the State Court (under Massachusetts common law)
cannot serve as a basis for a finding of the type of fiduciary relationship required to
deem a debt nondischargeable under § 523(a)(4) in this Circuit.

Murphy and Infosage did not allege the existence of an express or technical
trust in the Motion, nor did the State Court Opinion identify that this type of trust
existed. In the absence of a fiduciary relationship arising out of an express or
technical trust, the Court must deny summary judgment in favor of Plaintiff under
Count 2 of the Amended Complaint.

As a result of this conclusion, the Court will not discuss whether Cabot's acts
rose to the level of a defalcation under §523(a)(4).

II.   <u>Nondischargeability Claim for False Representations and Actual Fraud
      § 523(a)(2)(A) (Bach)</u>

To prevail on a claim of nondischargeability under § 523(a)(2)(A), Bach must
prove that Cabot engaged in actual fraud or made false representations. Similarly, in

State Court, Bach had to demonstrate that (a) Cabot committed actual fraud or made false representations that were material, (b) Bach relied upon the representations as true and acted upon them to her detriment, and (c) the State Court awarded damages to her on account of that inequitable conduct.[15] This identity of elements is essential to a determination of nondischargeability on summary judgment under a theory of collateral estoppel. The nature and specificity of the State Court's factual findings in support of those elements is also crucial.

A. State Court General Factual Findings

The State Court found that Cabot misrepresented her ownership and right to use the *Guide* and its contents.[16] The State Court also determined that it was critical to Cabot's enlistment effort that Bach accept Cabot's misrepresentations, and that Bach did so.[17]

In addition to the actual fraud claim in State Court, Bach also sued for breach of contract. And, as Bach and Cabot began the formal incorporation of the Where to Park venture, Cabot continued to withhold information from Bach about the nature of Infosage's rights and interests in the maps and other material originally included in the *Guide* owned by Infosage. That intentional nondisclosure prompted the State Court to determine that Cabot's conduct "constituted a breach of that agreement

---

[15] State Court Opinion at 30.

[16] *Id.*

[17] *Id.* at 31.

[with Bach] as well as a breach of Cabot's duty of fidelity and honesty."[18]

That finding in turn led this Court to query whether the damages awarded by the State Court were on account of (i) actual fraud and false representations or (ii) breach of contract. Thankfully, the State Court clearly articulated the specific legal and factual bases for Bach's damage award.

B. <u>State Court Apportionment of Damages</u>

The State Court Opinion broke down Bach's damages by time period and evaluated the overall award in the context of three discrete intervals of an ongoing fraudulent scheme.

1. <u>First Period (approximately 7 months, January 2004 – July 19, 2004)</u>

The first time period began in January 2004 and continued through July 19, 2004. Because the parties had not yet entered into a formal oral or written agreement, the State Court awarded damages for that period based upon Cabot's oral misrepresentations to Bach. The State Court awarded Bach $10,633.86 for time working on the Where to Park venture, which included $9,127.50 in services plus out-of-pocket expenses totaling $1,506.36.

2. <u>Second Period (approximately one year, July 20. 2004 – June 9, 2005)</u>

The second time period ran from July 20, 2004 through June 9, 2005. The State Court analyzed this period carefully, delving into extensive factual detail. The State

---

[18] *Id*. at 34.

Court Opinion describes three critical events during that period that impacted this Court's analysis of nondischargeability.

First, on July 20, 2004, Bach and Cabot reached an oral agreement that they were embarking as partners to establish a parking guide venture. Second, in January 2005, Bach and Cabot entered into a written letter agreement providing for an equal partnership between them to operate under the names of Parking Media, Inc. and Where to Park, Inc. Third, in March 2005, the State Court found that, "Cabot's deception was revealed, at least in part, when she informed Bach that there might be a problem with the maps."[19] Following that revelation, Cabot suggested that the partnership needed to obtain different maps for their hard copy and online resources.

Because of this disclosure, the State Court determined that even though Cabot alerted Bach to the existence of a problem, Bach still chose to remain in their partnership. Bach's choice led the State Court to conclude that Cabot's false statements could not justify the full value of the damages sought by Bach in the State Court Case "whether viewed through the prism of misrepresentation, breach of fiduciary duty, or breach of contract."[20] Rather than awarding Bach the full damages she sought ($146,955), the State Court limited her award to just one-third of that amount, or $48,495.15, plus reimbursement of her expenses of $16,279.96.[21] The

---

[19] *Id.* at 42 (internal quotation marks omitted).

[20] *Id.*

[21] *Id.* at 43.

Court will revisit the significance of this monetary limitation in Section C (below).

### 3.  Third Period (approximately two weeks, June 10 to June 26, 2005)

The State Court awarded Bach damages in the amount of $10,950 plus reimbursement of her expenses of $85.54 for a third period spanning June 10 to June 26, 2005.[22] The State Court based this award upon time Bach spent dealing with revelations about the full scope of Infosage's copyright interests, confronting Cabot and investigating her denials of Infosage's claims, and negotiating a division of the Where to Park venture so that it could remain as a viable business.[23]

### C. Determining Nondischargeability on Summary Judgment

The State Court grounded its total damage award ($86,444.51) upon three legal bases: breach of fiduciary duty, fraud, and breach of contract. The key question is whether this Court may now deem that award nondischargeable (in part or in whole) based solely upon entry of the State Court Opinion.

This Court is constrained to limit determinations of nondischargeability under § 523(a)(2)(A) to claims arising out of false representations or actual fraud by the debtor. Once Bach knew as of March 2005 that Cabot had made false representations but continued with her involvement in their partnership anyway, this Court had to consider whether the State Court awarded damages to Bach based at least in part upon a breach of contract theory instead of assessing liability purely for false

---

[22] *Id.*

[23] *Id.*

representations.

This alternative basis for liability (breach of contract) highlights the complexity in evaluating the nondischargeability of the second and third award of damages to Bach. If the liability for breach of contract was an alternative basis for liability that did not exclude a coextensive determination of fraud (which the State Court also found to exist), then collateral estoppel *may* apply, but only if this Court can explicitly determine that the State Court's factual findings as to liability support *both* a finding of breach of contract *and* a determination of fraud or fraudulent misrepresentation.

Looking at the State Court Opinion's decretal paragraphs in isolation, the Court faced a quandary. In general, claims for breach of contract would not give rise to nondischargeability. Likewise, absent express trust language (which has not been argued to exist), claims for breach of fiduciary duty also are typically dischargeable. So, the Court had to decide: Did the State Court Opinion provide for three separate (but equal) bases of liability, or did it segment the award by legal theory? This analysis forced the Court to consider whether Bach's award had to be bifurcated into nondischargeable and dischargeable portions.

1. Detailed Factual Findings

Without the State Court's detailed findings and breakdown of how it determined the damages that were awarded to Bach, this Court would have had no choice but to deny Bach's assertion that her claim was nondischargeable based upon

the aggregate award included in the decretal paragraph of the State Court Opinion. Because the State Court Opinion was exhaustive and apportioned damages through its textual analysis, however, this Court had helpful insight as to what portion, if any, of the total damage award might be nondischargeable.

To answer this question, the Court analyzed the question of apportionment of damages as the State Court did, by inspecting Cabot's actions attributable to each relevant time period.

### a. First Period (approximately 7 months, January 2004 – July 19, 2004)

The easiest damage award to analyze arose during the first period (January 2004 to July 19, 2004). During that period, there was no oral or written agreement. Bach was simply relying upon Cabot's representations that she (Cabot) owned the assets that she would be contributing to their business deal. This Court therefore easily found that the damage award of $10,633.86 from the first period was nondischargeable under § 523(a)(2)(A).

### b. Second Period (approximately one year, July 20. 2004 – June 9, 2005)

The greater challenge for this Court was teasing out whether the damages awarded by the State Court for the second time period (July 20, 2004 to June 9, 2005) were based upon false representations, breach of fiduciary duty, or breach of contract. The State Court appeared to have issued the award for the damages incurred during the second period on account of all three bases of liability.[24] The key question was

---

[24]  *Id.* at 43 ("[T]he Court is satisfied that an award of 33.0% of the amount requested is a fair and

whether these were coextensive or exclusive bases of liability.

Starting July 20, 2004, Bach and Cabot initially worked together based upon an oral agreement. Bach and Cabot subsequently reduced their oral arrangement to writing by signing a letter agreement in January 2005 (the "2005 Agreement"). The State Court found that Cabot made misrepresentations regarding use of the Infosage materials contemporaneously with the oral agreement reached in 2004, and further memorialized those misrepresentations as a warranty in the 2005 Agreement.

During the second period, Bach learned that Cabot had misrepresented the scope of her ownership of the Infosage maps and materials. Damages arising after that moment might be viewed as attributable to breach of contract due to the existence of an oral (later written) agreement between the parties.

While acknowledging that possibility, the Court viewed that argument as splitting hairs. In the first instance, the State Court attributed Bach's damages in the second period to Cabot's misrepresentations, and then acknowledged that those misrepresentations gave rise to alternative theories of liability sounding in breach of fiduciary duty and breach of contract. To put it more plainly, Cabot made false representations to Bach as part of the oral contract and the 2005 Agreement. Those false representations alone render Bach's damages nondischargeable. The fact that those false representations were included in an oral and written contract also creates

---

appropriate measure of damages attributed to Cabot's misrepresentations and breaches of fiduciary duty and contract.").

liability sounding in breach of contract.  And, because Cabot and Bach were members of a closely held entity, Cabot's misrepresentations also constituted a breach of fiduciary liability.  But, the fact that the misrepresentations were embodied in an agreement didn't eliminate their status as false representations by Cabot that now serve as the basis for a finding of nondischargeability of the consequential damages Bach incurred during the second period.

### c.  Third Period (approximately two weeks, June 10 to June 26, 2005)

During the third period, the State Court described the damages as compensation for actions Bach took as a result of Cabot's false representations. In other words, the damages during this final period also appear to constitute consequential damages arising from Cabot's misrepresentations. This Court has concluded that the damage award of $10,950 plus reimbursement of expenses of $85.54 from the third period is nondischargeable under § 523(a)(2)(A).

### 2.  Entire Award

Accordingly, the Court finds that all of the damages awarded to Bach by the State Court were on account of Cabot's false representations and actual fraud. As discussed, *infra*, this Court recognized that the State Court identified breach of contract and breach of fiduciary duty as alternative theories of liability arising from Cabot's misrepresentations. Even so, the State Court ultimately clarified that all of Bach's damages either (i) arose directly out of Cabot's false representations regarding her ownership of and unfettered right to use the maps and other content from the

Guide or (ii) were consequential damages arising from those false representations which supported damages under the alternative theories of liability.[25]

## CONCLUSION

The Court appreciated the wealth of factual findings and legal conclusions provided by the State Court Opinion. The Court accepted those findings as final and took all relevant conclusions into consideration in formulating this Opinion. Had the State Court not provided such copious detail, the Court would likely have been unable to view Bach's damages award as nondischargeable.

After having carefully reviewed the State Court Opinion, however, the Court is convinced that the State Court intended to award damages upon coextensive, rather than exclusive, bases of liability. This conclusion means that the State Court's findings regarding fraud and misrepresentation apply to Bach's entire damage award, and collateral estoppel permits a finding of nondischargeability as to Count Three of the Amended Complaint.

Unfortunately for Murphy and Infosage, the Court cannot arrive at a similar conclusion as to Count Two. Because the elements of the claims are not coextensive, identity of elements does not exist. Collateral estoppel does not apply. Material facts

---

[25] *Id.* at 42-43.

remain in dispute and summary judgment is inappropriate.

The Court therefore ORDERS that:

1. The Court DENIES summary judgment as to Count Two of the Amended Complaint.

2. The Court GRANTS summary judgment as to Count Three of the Amended Complaint.

3. This case will proceed to trial. At trial, the parties are DIRECTED to provide evidence pertinent only to facts not previously established by the State Court Opinion.

###

Copy furnished to:

Zach B. Shelomith, Attorney for Movant(s)
*Attorney for Movant(s) must serve this Order upon all interested parties in compliance with all applicable rules and file a conforming certificate of service.*